**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO. CR08-01201 ODW |
| ) | |
| Plaintiff , ) | **FINAL ORDER VACATING THE** |
| ) | **PRELIMINARY ORDER OF** |
| v. ) | **FORFEITURE RE: TRADEMARKS** |
| ) | |
| RUBEN CAVAZOS aka "Doc" et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| MONGOLS NATION ) | |
| MOTORCYCLE CLUB, INC., ) | |
| ) | |
| Petitioner. ) | |
| _____ | |

Petitioner, Mongols Nation Motorcycle Club, Inc. has petitioned the court to vacate or amend the preliminary order of forfeiture pursuant to 18 U.S.C §1963(*l*). That petition triggered an ancillary proceeding requiring the court to determine the interest, if any, petitioner has in the forfeitable property. FED. R. CRIM. P. 32.2(c)(1). Petitioner takes the position that it acquired sole ownership of the Word Mark and Image Mark in 1969 and 1970 and has had sole ownership of



them since.  More importantly, because it has not been charged as a defendant in the subject indictment, the government has no legal right to seize its property.  The court agrees on both points.

**1.   RELEVANT PROCEDURAL HISTORY**

On June 15, 2010, this Court entered a Preliminary Order of Forfeiture [3854] concerning the registered trademarks.  That determination was made without regard to any third party's interest because "such an interest must be deferred until any third party files a claim in an ancillary proceeding."  FED. R. CRIM. P. 32 .2(b)(2)(A).  Following the entry of that order, Petitioner filed an ancillary petition to Vacate or Amend the Preliminary Order of Forfeiture [3946] pursuant to  RULE 32.2(c) in which Mongols Nation Motorcycle Club, Inc. ("MNMC") asserted an interest in the property to be forfeited.

Petitioner argued two separate and mutually exclusive theories as to why it holds a superior interest in the property to be forfeited: (1) It has owned the marks continuously since before the commission of the acts that gave rise to forfeiture and (2) it became a bona fide purchaser for value of the Marks after the commission of those acts.

While the petition was pending, the government moved for an order authorizing the seizure of items bearing forfeitable  marks pursuant to 18 U.S.C.§1963(e).  [3942]  The request for authorization of seizure could not be granted until such time as the issues raised by the third-party petition were resolved.

On September 13, 2010 a hearing was conducted on the government's motion to dismiss the third party ancillary petition.  On September 21, 2010 the court entered a premature order denying the government's motion to dismiss and instead,  granting the petition.  This order was subsequently vacated and the parties conducted necessary discovery in preparation for an evidentiary hearing

set for November 19, 2010.  That hearing was vacated to permit the parties additional time to complete discovery. [4223].

On February 1, 2011 Petitioner filed a motion for summary judgment raising essentially the same arguments which support the petition. [4344].  The hearing on the petition and the motion for summary judgment were set for June 20, 2011, nearly a year after the preliminary order of forfeiture was entered. [4431]

### 2.   FACTS UPON WHICH THE PARTIES RELY

In 2008 Ruben Cavazos was the President of Mongols Nation.  In January 2005 and April 2006, during the course of his presidency, he registered the Word mark and the Image mark respectively with the U. S. Patent and Trademark Office.  In the Spring of 2008 he created Shotgun Productions, LLC, a company wholly and solely owned and controlled by Cavazos.  The purpose of Shotgun Productions, as stated in the Statement of Information, was "Promotional and Licensing services."

On March 26, 2008 Cavazos executed an assignment of Mongols Nation's entire interest in both the Word Mark and Image Mark to Shotgun.  The USPTO recorded the assignments on April 3, 2008.   According to Cavazos, the assignment was carried out with the full knowledge and consent of the leadership of the Mongols who were responsible for making decisions for the enterprise. This is disputed by Hector Gonzalez the successor president of Petitioner who states that the assignment was without the knowledge or authorization of Mongols Nation.

As the new president, Gonzales filed a "corrective assignment" of both marks, from Shotgun Productions, LLC to Mongols Nation.  This was recorded by the USPTO on October 14, 2008.  A little over a week later, on October 22, 2008 the court entered a Restraining Order prohibiting any sale, transfer, conveyance or disposal of the Marks by members of the motorcycle club.  Sometime later,

Mongols Nation became incorporated in the State of California under the full name Mongols Nation Motorcycle Club, Inc. ("MNMC")  On January 22, 2009, after the Indictment had been filed, Gonzales, in disobedience of the Restraining Order, assigned the entire interest in the  marks from Mongols Nation to MNMC.

### 3.    THE POSITIONS OF THE PARTIES

Petitioner's argument can be distilled into the following salient facts: The motorcycle club began using the marks in 1969 and 1970.  They were registered with the USPTO January 11, 2005 and April 4, 2006 for the Word and Image Marks respectively.  On October 9, 2008 the government filed the Indictment against Cavazos and 78 then and current members of the Mongols.  The earliest act alleged in the Indictment was March 16, 2002.  Mongols Nation is not named in the Indictment.  Count 85 of the Indictment gave notice that the government would be seeking forfeiture of the Word Mark.

### A.    COLLATERAL ESTOPPEL OR ISSUE PRECLUSION

On January 4, 2011 an order granting summary judgment was entered in *Ramon Rivera v. Kenneth E. Melson, et al,* 2:09-CV-02435 DOC, [90].  The plaintiff in that case was an <u>unindicted</u> full-patch member of the Mongol Nation who successfully  sought a permanent injunction to restrain the Government from seizing articles of his clothing bearing the marks.   He brought the action specifically in his own name and not in the name of the club.  In the written Order in which the court ruled in favor of Rivera, the following issues were decided:

1.    the Marks are not subject to forfeiture.

2.    RICO forfeiture is an *in personam* action and thus only property belonging to the defendant is subject to forfeiture

3.    A collective mark, like the "MONGOLS" mark is owned by the organization alone.

4.    The mark is owned by the MONGOLS.

5.   The motorcycle club's rights to the Marks were "property" of the unincorporated association and not of the members individually.  The individual members charged in the Indictment lack any forfeitable ownership interest in the MONGOLS Marks..

6.   The purported assignment to Shotgun Productions, LLC was without legal effect.

Petitioner argues that because these issues were already actually litigated and necessarily determined in another action, that determination is conclusive in subsequent suit involving a party in privy to the prior litigation.  Petitioner places great weight on the result obtain by Rivera precluding the government from seizing articles of his personal clothing bearing the mark.

The government argues, and rightly so, that Petitioner may not use the doctrine of collateral estoppel "offensively," citing the Ninth Circuit opinion in *Collins v. D.R. Horton, Inc.,* 503 F.3d 769 (9th Cir. 2003).  Offensive collateral estoppel requires, first, a "prior action," and has four prerequisites: (1) in the prior action there was a full and fair opportunity to litigate the identical issue; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom the estoppel is asserted was a party or in privity with a party in the prior action.  *Syverson v. IBM,* 472 F.3d 1072, 1078 (9th Cir. 2007).

First, *Rivera* was not a prior action in that it was filed in March 2009 whereas this action was filed October 9, 2008.  In addition, the preliminary order of forfeiture was entered in this case June 15, 2010, *prior* to the *Rivera* decision in January of 2011.  Thus, the *Rivera* decision, upon which Petitioner places such great weight, was not in fact a "prior action" and therefore does not meet the prerequisites of offensive collateral estoppel.

In any event, the court would not be guided in its determination in the ancillary proceeding in this criminal case by the outcome of that civil decision. At issue in this case is the determination of the third party's interests, if any, in marks which this court has found bear some nexus to the criminal enterprise in which those defendants were involved. That was not the issue in *Rivera*. He did not stand convicted of any offense. If a third party asserts an interest in the property to be forfeited, it does so by the filing of a petition and the court conducts an ancillary proceeding. This is the exclusive means by which a third party may challenge the forfeitability of the property at issue. Rivera was a motion for summary judgment. It was not conducted under the provisions of Federal Rules of Criminal Procedure Rule 32.2 and the results of that civil proceeding have no precedential value here.

The government, in large part, rests its position on the fact that Ruben Cavazos, as then President of Mongols Nation, and allegedly with the consent of the other leaders of the organization, transferred ownership of the marks to Shotgun Productions, LLC which was wholly owned by him. As the court understands the argument, if the Marks are transferred to Cavazos' organization, then ownership of the Marks has essentially been transferred to him. He thereafter, as part of his plea agreement, consented to the forfeiture of his interest in the marks.

Hector Gonzales, the new president sought to undo what Cavazos had done by re-assigning the marks from Shotgun to Mongols Nation Motorcycle Club, Inc. Thus, the argument goes, neither Cavazos nor Shotgun owned the marks and therefore Cavazos was in no position to consent to their forfeiture. The parties gloss over how the so-called "corrective assignment" was made from Shotgun Productions when nowhere on the Abstract of Title re: the Trademark Assignment is Shotgun Productions shown as an assignor. Apparently this second assignment from Shotgun back to Mongols Nation was made without the

1  consent or participation of Shotgun Productions.  In the final analysis, this is of no
2  moment and is not relevant to the court's final determination in this ancillary
3  proceeding.

4

5       On September 21, 2010 this court issued its Minute Order in which it made
6  its decision on the ultimate issue in this proceeding. [4115]  At the request of the
7  government, that Minute Order was vacated as being premature for the parties
8  had not yet had an opportunity to conduct discovery.  But no amount of discovery
9  could affect the dispositive legal issue: whether Cavazos, or any other individual
10 defendant, had a forfeitable ownership interest in the Marks.  That Minute Order
11 is therefore now re-instated and is fully incorporated herein by reference.

12

13      Stated as succinctly as possible, the court regrettably must conclude that
14 it must grant the petition to Vacate or Amend the Preliminary Order of Forfeiture
15 for the following reasons:

16 (1)  Criminal forfeiture is by nature *in personam*.  Only property belonging to the
17      defendant may be confiscated.  Section 1963(a) authorizes forfeiture of a
18      RICO defendant's property interest affording a source of influence over the
19      RICO enterprise.  There is no evidence that Cavazos or any other individual
20      member of the organization holds or ever held an ownership  interest in the
21      Marks in question.

22 (2)   The club maintains exclusive ownership of the Marks.  *See Cal. Corp.*
23      *Code* section 18110.

24 (3)  Mongols Nation was not indicted in *United States v. Cavazos* nor was it
25      named as a RICO defendant under section 1962(a) as receiving income
26      and benefitting from racketeering activity.  RICO does not impose criminal
27      liability on the RICO enterprise if it is not named as a "person."

28

(4)     The assignment of the marks to Shotgun Productions, an entity under Cavazos' sole control was invalid.  Any right or interest in a trademark must be "appurtenant to an established business or trade in connection with which the mark is employed."   The stated purpose of Shotgun was "promotional and licensing services." Clearly, Shotgun never used the mark to indicate membership in an organization substantially similar to that of Mongols Nation.

(5)     Property belonging <u>only</u> to the unindicted enterprise is not forfeitable.


THEREFORE, IT IS ORDERED, that the Petition is GRANTED and the Preliminary Order of Forfeiture is VACATED.  The Petition is sustained and the third party ancillary proceeding is closed.


**IT IS SO ORDERED.**

June 28, 2011

Otis D. Wright II
United States District Judge